421-0604-WC, City of Springfield Appellant by Kenneth Bima v. Illinois Workers' Compensation Comm'n Matt Wood, Appellate by Martin Haxson. Mr. Bima, you may proceed. Good morning. May it please the Court, Counsel, my name is Ken Bima and I represent the City of Springfield Appellate. I'm here to discuss the case of Kenneth Bima v. Illinois Workers' Compensation Com'n 421-0604-WC. I'm here to discuss the case of Kenneth Bima v. Illinois Workers' Compensation Comp'n 421-0604-WC. I'm here to discuss the case of Kenneth Bima v. Illinois Workers' Com'n 421-0604-WC. I'm here to discuss the case of Kenneth Bima v. of Dr. Morris's petitioner's unappeased testimony and the record-taken as a whole. I think if we step back and look at the burden that this claimant faces, we can all acknowledge how difficult it is. We know how cancer operates. We all have loved ones who have had cancer, and I think it's common knowledge that the vast majority of these individuals are inflicted with this disease, and the vast majority, there's no known cause. Mr. Haxel and I were partners for 20 years. We had a very dear partner who passed away from stomach cancer, and he had no risk I think correctly opined that kidney cancer, like most, in the vast majority of cases, there is no cause. We can't point to anything that determines. Mr. Beeman, let me just interject the question. You're right. Eggener clearly found that there was no connection between firefighting and the kidney disease. Orris came to the opposite conclusion. Orris concluded that there was a impossible burden or something along those lines. Why couldn't the commission have adapted Orris' conclusions over those of Eggener? Well, they certainly could have, and we see this all the time. We're the commission. We give them deference. They're the experts in deciding which expert or what testimony gets the most weight. As noted in my brief, Dr. Orris' opinion has a lot of problems, and it starts with, I think it's interesting to point out, if you're a petitioner or the claimant's shoes, how do you go about meeting this burden? He saw a primary care physician, an oncologist, a urologist, a colon surgeon throughout this time, and the claimant elected not to get expert testimony from the providers that knew him the best. And it's pretty clear why, especially when you look at Dr. Lieber's medical records, which certainly imply that this cancer was genetic-related. Dr. Lieber notes he does not—he knew he was a firefighter, and he says he does not have a lot of chemical exposure. He's not been exposed to a lot of secondhand smoke, but then he goes on to say strong prevalence of cancer in his family. But we know that Dr. Pacheco saw him on several occasions, and he actually takes a very detailed family history of his cancer, unlike Dr. Orris, who finds out that it is so prevalent in his family that he meets the criteria of Genetic Syndrome 1. And on two occasions, he has this very difficult and intimate conversation with the claimant and his wife, encouraging them to undergo genetic testing so that they can be proactive in any future cancers. Again, another part of why it's difficult to prove the relationship is the lack of good exposure assessment. The claimant, unlike other claims where you can get an ergonomic study or you can get a job description for these there's no good exposure assessment. The claimant testified that, on average, he went to four fires a month, but we don't know what his role was in those fires, how much exposure he was, what type of toxins he was exposed to. So they elected to go with an expert, which they certainly have the differently than Dr. Eggener, but it's flawed. Dr. Orris does not have the essential factor, which is the heart of the causation issue in this case, about the genetic link to the cancers. He's not... Mr. Beam, if I could just interject a question. In order for the claimant to recover, does he have to show that firefighting was the sole or the principal cause, or can he collect if it is a contributing cause? As the briefs correctly stated, it has, you know, Illinois just has to be a contributing factor. That's it. But if you don't have these essential factors, when you're there, you're being assigned this task to address the causal relationship between this very rare form of cancer in his work as a firefighter, and you're not aware that he was syndrome one, what is that opinion worth? Most shocking in this case, most shocking is we're not talking about a common form of kidney cancer. He has a very rare form of kidney cancer, chromophobia, renal cell carcinoma, and he dodges the fact that he's diagnosed with this very form of cancer. It was only the city's expert who addresses this very rare form of cancer, and I will quote from his report, this is a relatively rare form of kidney cancer that is a completely different etiology compared to more common types of kidney cancer. There is absolutely no evidence whatsoever in the medical literature or elsewhere to suggest the being a firefighter. So that's the heart of the issue, this very rare form of kidney cancer. So how does the, Mr. Bhima, so how does the other expert answer that very simple question? The other expert being Dr. Orris? That's all it is this case is about, these two doctors, okay? So he has to address it. He doesn't address it. He ignores it, despite the fact that this is the issue. All the studies that he goes to with the common forms, he doesn't address the main issue, which is this rare form of kidney cancer that is a completely different etiology than the common forms of kidney cancer. Did you cross-examine him on that issue? He never addressed it. We never took depositions. Well, so what is he required to do other than give an opinion? And doesn't the obligation then fall to you to draw up the basis of the opinion? Yeah, I agree. He needs to form an opinion and he didn't. The only expert who formed an opinion on the issue in this case was the city's expert who addressed the chromophomy renal self-carcinoma and its relationship to the claimant in this case. Their expert did not. No, didn't he issue an opinion stating, in his opinion, there was a connection between the cancer that the claimant suffered from and his firefighting? No. I think he did that based on the common form of cancers. In the literature that he reviewed, he did not address the specific form in rare cancer. But that wasn't my question. As an expert, is he required to do anything other than to give his opinion that there is a causal connection between the cancer this man suffered from and his job? That's all he's required to do. And then it's your obligation to draw out of him what the basis for that opinion is. And if you didn't draw it out of him, then what are we to do with that? I think he has an obligation to have some critical factors when he forms an opinion. The fact that he doesn't have the critical factors is significant. And then he reviewed the literature and generically addressed the common form of kidney cancer, but he didn't address the specific form of kidney cancer. Mr. Beeman, let me ask you a pointed question. Obviously, it's the commission's responsibility primarily to judge the credibility of the witnesses, the expert's opinion, and the weight to be given to the testimony. And they believe Doris over Agnew. So instead of substituting our judgment for that of the commission, what is your suggested rationale for how we would overturn the commission's decision? The case law that go back to the foundation of that opinion. And if you don't have the critical factors in forming the opinion, if you're not aware of the family history, if you're not aware of the fact that genetic testing was prescribed, then what is the opinion worth? But you've said that on a couple of occasions, isn't it, for the commission to determine what that opinion is worth, even if this opinion is somehow flawed, didn't go down the avenue you would like to have? It is the commission's job and they failed in this case. That's my point. They failed to, like I said, they were caught up with this rebuttable presumption in a one sentence opinion that they opined that he met his burden. They've got a job to look at the foundation of the opinion and they didn't do it in this case. So are you acknowledging that when Oris gave this opinion following up on Justice Hoffman's question, did you bring out that he was missing these other factors that you're now telling us about? Did you bring that out on cross? I did not. You know, Dr. Edner brought out the chromophobe renal cell carcinoma in his report. It highlighted the difference between the two opinions. For these reasons, I would ask that this case be reversed in a finding that there is no of kidney cancer and the claimants work as a firefighter. Thank you, Mr. Beamer. You'll have time and reply. Mr. Haxel, you may respond. Thank you, Your Honor. I may please the court and counsel. My name is Martin Haxel. I'm representing the firefighter in this case, Matt Wood. And as we all know, the arbitrator and the found in favor of the firefighter and this court should do the same. The first item I'd like to address is all of this stuff about Dr. Pacheco and colon cancer. First of all, the first time I ever knew about Dr. Pacheco's records was a trial. It was a trial. I saw him for the first time at trial. Second of all, nowhere in the evidence, nowhere does anybody say that a strong family history of one type of cancer create a risk factor for another type of cancer. One thing that both the city's expert, Dr. Edner and my expert, Dr. Orris, agree upon is that one of the risk factors for developing kidney cancer is having a family history of kidney cancer. They don't say colon cancer. They don't say pancreatic cancer or any other type of cancer. They say kidney cancer. And then to take it a Is he an oncologist? Is he a gastrointestinal guy? Is he a general surgeon? We have no idea. And if the city wanted to make a connection between a family history of colon cancer and the development of kidney cancer, it was incumbent upon the city to either get that testimony from Dr. Pacheco or give those records to Dr. Edner and let him prepare another report. They didn't do any of that. And the last item I'll say about that is Mr. Wood, the firefighter, did tell his doctor, Peter Orris, that he did have a colonoscopy in 2016. That's in his report. Dr. Orris actually examined the firefighter. Dr. Edner did not. So all this stuff about colon cancer, it's irrelevant. It hasn't been addressed by either doctor which offered an opinion in this case. Next, if you take Dr. Edner's opinion to its logical conclusion, what is he really saying? Look at these studies. There's no clear, there's no definitive, there's no substantial connection between firefighting and the development of kidney cancer. And both doctors, Orris and Edner, cite some of the same studies, discuss some of the same studies, and have disagreements about what they really mean. But I would point this out. Number one, like so many other areas of medicine, this is evolving over time. Second of all, the studies cited by these two doctors in their reports date as far back as the 80s. You've got studies in the 80s, the 90s, the 2000s, dealing with firefighters contracting cancer. And I would like to point out that all the studies cited by both experts predate the trial exhibit. I submitted it at arbitration from the National Institute of Occupational Safety and Health, which says firefighters have been found to get cancer more frequently than the general population with regard to certain types of cancer. And kidney cancer is one of those listed. And again, Dr. Edner basically is saying there's no connection between firefighting and developing cancer. At the same time, Dr. Edner says for the overwhelming majority of all cancer cases, there is no clear, and I emphasize the word clear, cause or etiology. So once again, in his mind, the connection simply isn't there for any type of cancer. So contrast that with what Dr. Peter Orris wrote. Dr. Peter Orris is an occupational health specialist. And it's clear in his report, he's had a special interest in researching the hazards of firefighting. He used to work for the National Institute of Occupational Safety and Health. And he's looked at these studies. And he says, yeah, I think there's a connection. And I think it's also very, very important to point out that, first of all, there are no other risk factors associated with Matt Wood for the development of kidney cancer, other than his work as a firefighter. Second of all, for at least the 10 years of his firefighting career, when they would go to a fire, as soon as the flames were extinguished, the breathing apparatus comes off, they spend the next several hours overhauling the burned out structure looking for smoldering fires elsewhere and breathing in all of the noxious fumes. And that all has been changed. Now they monitor the existence of those noxious fumes before they're allowed to take the breathing apparatus off. Now when they get back to the fire station after extinguishing a fire, they clean all of the soot and debris off of their firefighting gear, so it's not available to contaminate the firefighters anymore. And so, you know, this is, again, something that is evolving. 20 years ago, nobody had ever heard of chronic traumatic encephalopathy. It hadn't been discovered. Now everybody knows about it. And all of the football leagues and other contact sports leagues are aware of it, and in some instances taking very real steps towards alleviating that. In the context of studies, you've got more conclusions pointing towards a connection than not. That's why NIOSH came out with their report in 2016. And again, petitioner is not obligated to prove a substantial or clear or definitive connection between firefighting and his cancer. Petitioner only has to prove a connection. But Mr. Haxel, your opponent is focusing in on, we know more than it's just kidney cancer at this point. There's been a diagnosis that it's a very rare forms, specifically diagnosed cancer, and that there's nothing in the literature linking that specific rare cancer to exposure to the hazards of firefighting. How do you answer that? I go back to what I was just saying, your honor. Did Dr. Orris discuss this extremely rare type of cancer? He did not. He discussed kidney cancer. Do we know how many forms of kidney cancer there are? We do not, not based upon the evidence presented at trial. What the city is relying upon is Dr. Eggener basically saying none of these cancers can definitively be connected to firefighting. Dr. Orris is saying there is a connection. Dr. Orris, again, based upon his years of focusing on firefighter health, thought especially in the absence of any other risk factors, there was a connection. The commission agreed. And if you look at the body of evidence presented at trial contained in this record, I would suggest there's simply no way you can suggest a contrary result is clearly apparent. Both the arbitrator and the commission spent a lot of time analyzing everything in these reports prepared by these experts. They concluded Dr. Orris' opinion was most persuasive. And this court can't find otherwise. And unless there's any other questions, that's all I have. Any questions from the court? No. Okay. Thank you, Mr. Haxel. Mr. Beamer, you may respond. Again, the expert that the claimant relies on was not aware that the claimant was prescribed testing for genetic syndrome one. Council wants to believe that this testing is only done for colon cancer, which was prevalent in this case, the family history of the claimant. But if you look at Dr. Pacheco's record, he wants him screened for genetic syndrome one because it will place him and possibly his children at higher risk for cancer. It doesn't say bladder cancer. It doesn't say colon cancer. It says cancer. This is a critical factor that Dr. Orris was not aware of and is without foundation, therefore, to offer an opinion. We talked then about what I see as the main issue in this case, this rare form of kidney cancer. Only the city's expert addressed this, and he indicated it has a completely different etiology than the cancer that their expert spoke of. They're different. They have different causative factors, a totally different etiology. The burden then is on the claimant to address this specific form of cancer, which the city's expert indicated that there's no literature or any backing that this is related to work as a firefighter. Is that right, counsel? I mean, isn't it the claimant only has to prove a connection? And we have Orris says there's absence of risk factors. There's a potential that kidney cancer, there's a connection. And you're taking us a little deeper with your expert. But if the commission found there is a connection, how do we get to where you want us to get to? So the foundation, right? I mean, get critical factors. You would agree when you address causation, the relationship between this rare form of kidney cancer, you look at causation factors, you would agree that genetic genetics plays a role in cancer. This individual was prescribed genetic testing. If your expert isn't aware of that, isn't that significant when that's the main issue? It is, it is. But the main issue is whether or not claimant proves there's a connection. What you're telling me is, look, my expert dove deeper, has a better understanding, gave better opinions. I'm asking you to tell us how to get there. How do we set aside the commission's decision and find in your favor in light of the fact that there is proof of or there is, pardon me, evidence of a connection from Mr. Haxel's expert? Well, the commissioner, by giving Dr. Orris more weight, because he had the essential factor, it may have changed his opinion. Most specifically, Dr. Orris speaks to this common form of kidney cancer that has a different etiology than this rare form. Our expert's the only one who addresses the issue. We're not talking about the common forms of kidney cancer, which Dr. Orris addresses. We're talking about a very specific and rare form, completely different etiology. They can't be the same. You can't talk about common forms of kidney cancer and this rare form and say that they have the same, they have different etiologies. It's never addressed by their expert. They don't meet their burden. Let me lay my cards out. So the commission is in a place where we respect their understanding and education as to the medical portions of the testimony. I don't know if that's for this court. Don't we accept the commission? And I really am just asking you to explain to me how to ruin your favor. You don't accept it blindly. Nowhere does the commission address this very rare form of kidney cancer. And that's the frustrating part. That's the issue. You need to prove that this very rare form of kidney cancer is related to your work as firefighter. Instead, the claimant proved that a he ignored the main issue and went to the common form of kidney cancer. Mr. Bhima, how would you respond to this argument? That the problem with Eggner is that in his opinions, he sought to find an absolute causation explanation for the illness. He was speaking in terms of the studies he reviewed. He felt did not conclusively demonstrate that firefighters were at an elevated risk. There's no definitive association between firefighters and development of kidney cancer. Is that's what's requiring absolute 100% causation connection? See, this is the confusing part. And you know, this is typical, right? We have experts who who disagree and they look at the same literature. And they're fighting over this common form of cancer, right? Where they're having this, this, you know, theoretical and intellectual battle over these studies on the common form of cancer. When over here, it was only our expert, this belongs in a different bucket than what they're discussing. And only Dr. Eggner is like, why are we talking about this? He's got this very rare form of kidney cancer, completely different etiology. So we can argue and we can go back and forth and personal reputations and you know, tit for tat and stuff. But what the real conversation is, and Dr. Eggner, you know, addresses this eventually, it's this rare form, and there's no literature. Dr. Orr, show us the literature on this chromophobe carcinoma. There is none. Okay, your time is up, Mr. Bhima. Thank you. Any further questions from the court? None? Okay, well, thank you, counsel, both for your arguments in this matter.